# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# TERRE HAUTE DIVISION

| | | |
|---|---|---|
| THOMAS H. HURLOW, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Cause No. 2:10-cv-244-WTL-WGH |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**ENTRY DISCUSSING MOTION FOR RELIEF PURSUANT TO
28 U.S.C. ' 2255 AND DENYING CERTIFICATE OF APPEALABILITY**

For the reasons explained in this Entry, the motion of Thomas H. Hurlow for relief pursuant to 28 U.S.C. ' 2255 must be denied and the action dismissed with prejudice. In addition, the court finds that a certificate of appealability should not issue.

## I. The § 2255 Motion

### A. Background

Drug and gun charges against Hurlow in No. 2:09-cr-10-WTL-CMM-01 were resolved through the submission and acceptance of his plea agreement with the United States. In addition, the plea agreement provided that Hurlow waived his right to appeal his conviction and sentence and expressly agreed not to contest, or seek to modify, his sentence or the manner in which it was determined in any collateral attack, including, but not limited to, an action brought under 28 U.S.C. ' 2255.

The court accepted Hurlow's plea, finding that it complied with the requisites of Rule 11 of the *Federal Rules of Criminal Procedure.* In doing so, the court found that Hurlow was entering his plea of guilty knowingly and voluntarily, and understood the consequences of his plea. On September 10, 2010, the court sentenced Hurlow. No direct appeal was filed.

A motion pursuant to 28 U.S.C. ' 2255 is the presumptive means by which a federal prisoner can challenge his conviction or sentence. *See Davis v. United States*, 417 U.S. 333, 343 (1974). Hurlow has filed such a motion on September 9, 2010, asserting that he was denied the effective assistance of counsel in connection with his guilty plea and the failure to file a motion to suppress evidence seized during a search of his residence on December 16, 2008.

The court's first encounter with Hurlow's 28 U.S.C. § 2255 motion resulted in the denial of the motion based on the waiver provision in the plea agreement. The Court's denial of the § 2255 motion was reversed by the Seventh Circuit, and the case was remanded for a hearing on Hurlow's Sixth Amendment claim. *See Hurlow v. United States,* 726 F.3d 958 (7th Cir. 2013). The premise of the reversal was that "appellate and collateral review waivers cannot be invoked against claims that counsel was ineffective in the negotiation of the plea agreement." *Id.,* 726 F.3d at 964.

Hurlow indeed seeks to overcome the waiver provision in his plea agreement based on ineffective assistance of counsel. He does so, as noted above, by contending that the consent given to police for a search resulted from a coercive police threat and that he objected to the search prior to the consent being given.

### B. The Hearing

A hearing was held on April 18, 2014. Hurlow was present with his counsel of record. The Court heard testimony from Hurlow, Hurlow's wife Tina (Funk) Hurlow, Hulow's prior counsel John A. Kesler, II, Detective Paul Hartzler, and former Deputy-Sheriff Jim Palmer. The Court now makes the following findings with respect to the evidence at that hearing: On December 15, 2008, Indiana Child Protective Services ("CPS"), specifically, Jackie Hofmann, received a complaint that Hurlow was dealing methamphetamine from a residence located at 2427 North 27th Street in

2

Terre Haute, Indiana. At the time, Hurlow was residing at that address with his then-girlfriend, Tina Funk, and with certain minors. Hoffmann requested that Detective Paul Hartzler assist her with a welfare check on the home and its residents. Hartzler agreed to the request, and on the afternoon of December 16, 2008, Hoffmann, Hartzler, and then-Deputy Sheriff Jim Palmer went to Hurlow's residence. Hurlow and Funk were co-tenants of that residence.

When Hoffmann, Hartzler and Palmer arrived at the rear of the residence, Hurlow and Funk were in their bedroom at the front of the house. Hurlow's teenage stepson, Dustin Balder, notified Hurlow and Funk that there were police at the back door. Hurlow, not wearing any clothes, got up from the bed, noticed police officers also at the front door, removed some drugs from the pocket of his pants, which were on the floor, then started moving toward the back of the house. Funk had gone to the kitchen where the police had already entered the house.

Hurlow, who was naked, was moving through the small house. Placing the drugs behind his back, he told one of the police officers that he would return to his bedroom to get dressed. Hurlow then hid the drugs in the bedroom of one of the children and went back to his bedroom to put clothes on.

Police then spoke to Funk in the kitchen but kept Hurlow toward the front of the house. The police did not have a warrant to search the house. The police in the kitchen asked Funk to consent to a search. According to the police, she did so without any reservations. Funk, however, told a different story. She testified that the police threatened to remove her children from the home if she did not consent to a search. The Court, however, finds that there were no coercive measures taken or statements made to secure Funk's consent to a search of the residence.

Upon searching the residence, police found the drugs Hurlow had hidden in the child's bedroom. The police also found a gun in the residence. To protect Funk and his stepson, Hurlow

3

admitted to the officers that the narcotics and weapon belonged to him, whereupon he was arrested and taken to the police station. At the police station, Hurlow again confessed to possession of the items which police had seized during the search of the residence. Although Hurlow did not give consent to the search on December 16, 2008, the Court finds that he did not withhold consent or direct that the police leave the residence if they lacked a search warrant.[1]

Hurlow was initially charged with offenses in an Indiana state court. He was appointed counsel in that proceeding. The state charges were dismissed when Hurlow was charged in federal court. Hurlow qualified for appointed counsel under the Criminal Justice Act and attorney John Kesler was appointed to represent Hurlow in federal court.

Following Hurlow's first appearance on the federal charges on May 22, 2009, Hurlow and Kesler discussed the circumstances of Hurlow's arrest and the federal charges Hurlow faced. Kesler was also aware of Hurlow's criminal history, because of which Hurlow was exposed to a life sentence on the federal charges. According to Kesler, Hurlow was emphatic as to the disposition of the charges he sought. That disposition was for Hurlow to plead guilty to the charges in return for assurance that the matter would be concluded quickly and would be concluded without any charges being filed against Funk or Funk's further involvement in the matter.

Kesler acted in furtherance of Hurlow's unequivocal instructions. After communications with the prosecutor, Kesler received a plea offer from the United States providing that in exchange for Hurlow's guilty plea, he would receive a 248-month sentence. He then communicated this offer to Hurlow. *See Missouri v. Frye,* 132 S. Ct. 1399, 1408 (2012) (defense counsel have a duty "to communicate formal offers from the prosecution to accept a plea on terms and conditions that may

---

[1] Hurlow testified at the hearing that he repeatedly asked the police to leave. The Court, however, does not find this testimony to be credible.

be favorable to the accused."). Hurlow and Kesler signed their portions of the tendered plea documents on June 11, 2009. The plea agreement was then submitted in open court on July 29, 2009, at which time Hurlow's statements to the court leave no doubt that his plea was knowing, intelligent and voluntary. *See United States v. King*, 506 F.3d 532, 534 (7th Cir. 2007)(court notes after examining the circumstances of a guilty plea that defendant Ahas given us no reason to doubt the veracity of his sworn statements that, notwithstanding his ingestion of the drug, he understood the charges against him, the rights that he was relinquishing by pleading guilty, and the consequences of his plea®). Subsequent proceedings occurred as already narrated.

### C. Analysis

"If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Lafler v. Cooper,* 132 S. Ct. 1376, 1387 (2012). To establish ineffective assistance of counsel, a criminal defendant must first show that "counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington,* 466 U.S. 668, 688 (1984). This inquiry looks at whether trial counsel fell below the standard of a competent attorney. *See id.* at 688–91. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Second, to succeed on an ineffective-assistance claim, a criminal defendant must show that counsel's ineffectiveness prejudiced him. *Id.* at 692. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

There was no motion to suppress filed in Hurlow's case relating to items found during the search of December 16, 2008. "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the [petitioner] must also prove

that his Fourth Amendment claim is meritorious . . . ." *Kimmelman v. Morrison,* 477 U.S. 365, 375 (1986). More bluntly, "[w]hen the claim of ineffective assistance is based on counsel's failure to present a motion to suppress, [the Seventh Circuit] ha[s] required that a defendant prove the motion was meritorious.@ *United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir. 2005) (citing *Owens v. United States*, 387 F.3d 607, 610 (7th Cir. 2004).

Hurlow argues that he presented Kesler with circumstances offering a straightforward application of the holding of *Georgia v. Randolph,* 547 U.S. 103, 120 (2006), that "a warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable on the basis of consent given to the police by another resident." The court has found, however, that Hurlow did not communicate his express refusal of consent to police during the search. Again, evidence to the contrary is not credible. This case, therefore, is better informed by the decision in *United States v. Watkins,* 2014 WL 3702578 (11th Cir. July 28, 2014), in which the defendant's wife gave unlimited consent to a search and the defendant himself did not object to his wife's consent. "To obtain the protections of *Randolph,* a defendant, while present with his cotenant, must object to the search. Mr. Watkins's actions fall well outside *Randolph's* conception of an objection." *Id.* at *9 (footnote omitted).

### D. Conclusion

Hurlow has failed in his efforts to vitiate Funk's consent under *Randolph* to the search or demonstrate that her consent was coerced. A motion to suppress would not have been successful, and in these circumstances Kesler's failure to file such a motion was neither deficient performance nor prejudicial to Hurlow. In turn, Hurlow was not denied his Sixth Amendment right to effective assistance of counsel in the negotiation of his plea agreement. *A.M. v. Butler*, 360 F.3d 787, 795 (7th Cir. 2004)("If there was no underlying constitutional violation, a motion to suppress would

have been futile and counsel could not be viewed as ineffective for failing to present such a motion.")(citing *Strickland*, 466 U.S. at 686). This undercuts Hurlow's attempt to circumvent the waiver provision of the plea agreement. *See United States v. Smith,* 759 F.3d 702 (7th Cir. 2014).

The foregoing shows that Hurlow is not entitled to relief. The motion for relief pursuant to ' 2255 is therefore **denied.**

Judgment consistent with this Entry shall now issue.

*This Entry and the accompanying Judgment shall also be docketed in the underlying criminal action, No. 2:09-cr-10-WTL-CMM-01.*

## II. Certificate of Appealability

Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the *Rules Governing ' 2255 Proceedings,* and 28 U.S.C. ' 2253(c), the court finds that Hurlow has failed to show that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). The court therefore denies a certificate of appealability.

IT IS SO ORDERED.

Date: 9/24/14

                                                        Hon. William T. Lawrence, Judge
                                                        United States District Court
                                                        Southern District of Indiana

Distribution:

Electronically Registered Counsel